**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MONICA SPARKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25 C 12819 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| TRUIST BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Monica Sparkman brings this action against Truist Bank (Truist), asserting violations of

the Fair Credit Reporting Act (FCRA), the Illinois Consumer Fraud and Deceptive Business

Practices Act (ICFA), and Illinois common law based on allegations that Truist failed to

reasonably investigate and correct inaccurate financial information it submitted to credit

reporting agencies despite receiving notice of the error.[1] Before the court is Truist's motion

(dkt. 6) to dismiss the complaint (dkt. 1-1). For the reasons stated below, the court grants Truist's

motion.

**BACKGROUND[2]**

In Spring 2025, Sparkman made six payments to creditors in the hopes of improving her

credit utilization and score. She made these payments, which varied in amounts between $117

and $300, to qualify for a $300,000 loan. In the end, her credit score did not improve following

---

[1] This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367. Venue is proper pursuant to 28 U.S.C. § 1441(a).

[2] This section is drawn from Sparkman's complaint. For the purposes of the motion to dismiss, Sparkman's well-pleaded allegations are accepted as true. *See Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

these payments, and she was unable to close on the loan. As it turned out, one bank that Sparkman maintains a credit card account with, Truist, had falsely reported to credit reporting agencies TransUnion, Experian, and Equifax that she had made a late payment in May 2025.

Following her discovery that Truist had supplied false information to the credit reporting agencies, Sparkman promptly contacted Truist to dispute the inaccurate late payment. But despite being informed of the inaccuracy, Trust failed to conduct a reasonable investigation or correct the inaccurate reporting. Instead, in a letter dated July 23, 2025, Truist stated that it had researched the account based on the information provided, in addition to information contained in its records, and determined that the falsely reported late payment was, in fact, accurately reported. As a result, the disputed late payment continues to appear on Sparkman's credit reports, and she remains unable to secure financing.

Accordingly, on September 9, 2025, Sparkman filed this action with the Circuit Court of Cook County. She alleges that Truist violated the FCRA by furnishing false financial information to the credit reporting agencies and then failing to reasonably investigate and correct the inaccurate late payment after receiving notice that the information was false. She also brings an Illinois common law fraud claim and a claim under the ICFA based on the same conduct. On October 21, 2025, Truist timely removed this action to federal court. Truist now moves to dismiss this action for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(b)(6). In reviewing such a motion, the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in a

2

plaintiff's favor. *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted). Courts are not bound, however, "to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co.* v. *Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, a complaint must be well-pleaded. *See Iqbal*, 556 U.S. at 678 (2009). In other words, it must contain sufficient factual detail, accepted as true, to state a plausible claim for relief that rises above the speculative level. *Id.*; *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

## ANALYSIS

### I.    Count I – FCRA Claim

Count I is a claim for violation of the FCRA brought under section 1681s-2(b) of the Act. Sparkman asserts that, as a furnisher of credit information, Truist was required under section 1681s-2(b) to reasonably investigate and correct the late payment information it supplied to the credit reporting agencies once she notified it of the reporting error. In its response, Truist does not dispute that it constitutes a furnisher of credit information under the FCRA. Nor does it dispute that, as a furnisher, it is obligated to investigate and correct inaccurate information upon receiving certain notice. Instead, Truist argues that Count I must be dismissed, since Sparkman has only alleged that she—and *not* a credit reporting agency—notified Truist that the information was disputed as inaccurate. Sparkman's notice, Truist argues, did not trigger its obligations to investigate and correct the inaccurate financial information.

Under the FCRA, furnishers of information are broadly obligated to provide accurate information to credit reporting agencies and to correct and update information after discovering inaccuracies in the information provided. *See generally* 15 U.S.C. § 1681s-2. Even so, these obligations primarily derive from section 1681s-2(a) of the Act, which states that furnishers

3

"shall not furnish any information relating to a consumer to any consumer reporting agency if the [furnisher] knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A). It also provides that furnishers must promptly notify consumer reporting agencies of any inaccuracies in information it has furnished, upon determining that the furnished information "is not complete or accurate." *Id.* § 1681s-2(a)(2). No private right of action exists for violations of this section, however, since other subsections of the FCRA bar individual suits from being brought under it. *See Neiman* v. *Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *6 (N.D. Ill. July 25, 2014) (citations omitted) (explaining that, due to sections 1681s–2(c) and 1681s-2(d), "there is no private right of action under § 1681s–2(a)"). Instead, suits under section 1681s-2(a) may only be brought by certain Federal agencies and officials and select State officials. 15 U.S.C. § 1681s-2(d).

Here, no doubt due to this impediment, Sparkman brings her FCRA claim under section 1681s-2(b) instead. This section also creates certain furnisher obligations related to the treatment of inaccurate information, but unlike section 1681s-2(a), no stripping provisions in the FCRA preclude civil suits under it. *See Dornhecker* v. *Ameritech Corp.*, 99 F. Supp. 2d 918, 926–27 (N.D. Ill. 2000) (concluding that consumers "have a private right of action against a furnisher of information under Subsection (b) of Section 1681s–2 of the FCRA"). The furnisher obligations under section 1681s-2(b) are not, however, coextensive with those set forth in section 1681s-2(a). This dooms Sparkman's claim.

Section 1681s-2(b) requires furnishers, among other requirements, to conduct a reasonable investigation of disputed information and report any inaccuracies uncovered during that investigation to credit reporting agencies. 15 U.S.C. § 1681s-2(b)(1)(A)–(E). But these duties are limited by the requirement that the furnisher first "receiv[e] notice pursuant to section

1681i(a)(2) of this title." 15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2) meanwhile describes only two forms of notice: notice from a consumer to a credit reporting agency and notice from a credit reporting agency to a consumer.[3] Taken together, sections 1681s-2(b) and 1681i(a)(2) indicate that a furnisher's obligations under section 1681s-2(b) are only triggered when a furnisher receives notice *from a credit reporting agency* that financial information it furnished is disputed. For this reason, several courts have held that, to state a claim under section 1681s-2(b) based on a furnisher's failure to reasonably investigate and correct inaccuracies on a consumer's credit report, a consumer needs to allege that a credit reporting agency notified the furnisher of the dispute. *Dornhecker*, 99 F. Supp. 2d at 928–29 (dismissing without prejudice for failure to allege that furnisher "received notice from a *consumer reporting agency* that the credit information is disputed"); *Rideaux* v. *Travelers Ins. Co.*, No. 12 C 2592, 2013 WL 3354462, at *5–6 (N.D. Ill. July 1, 2013) (same); *Pichugin* v. *Experian Info. Sols., Inc.*, No. 11 CV 04375, 2012 WL 527529, at *3 (N.D. Ill. Feb. 15, 2012) (same); *Gulley* v. *Pierce & Assocs.*, No. 10 C 573, 2010 WL 5060257, at *4 (N.D. Ill. Dec. 6, 2010) (same), *aff'd sub nom. Gulley* v. *Pierce & Assocs., P.C.*, 436 F. App'x 662 (7th Cir. 2011); *see also Himmelstein* v. *Comcast of the Dist., L.L.C.*, 931 F. Supp. 2d 48, 53 (D.D.C. 2013) ("[F]ederal courts have been uniform in holding

---

[3] 15 U.S.C. § 1681i(a)(2) Prompt notice of dispute to furnisher of information

(A) In general

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

(B) Provision of other information

The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

5

that a private right of action under the FCRA only exists where the furnisher is notified of the dispute by a CRA."); *Smuk* v. *Bank of Am., N.A.*, No. 15 C 6242, 2016 WL 427095, at *3 (N.D. Ill. Feb. 2, 2016) (contrasting allegations that a furnisher received notice from a credit reporting agency with allegations that a furnisher received notice from a consumer).

Here, Sparkman has not alleged that she contacted a credit reporting agency to dispute the late payment, nor has she alleged that Truist was contacted by any credit reporting agency regarding the disputed late payment. Instead, Sparkman alleges only that *she* contacted Truist. Based on her allegations, Truist's section 1681s-2(b) obligations were never triggered, and thus no violations of the section occurred. As such, Sparkman's Count I must be dismissed without prejudice for failure to state a claim.

## II.     Counts II and III – Illinois State Law Claims

Next, Truist argues that Sparkman's state law claims, an Illinois common law fraud claim and a claim under the ICFA, are preempted by section 1681t(b)(1)(F) of the FCRA. Federal preemption is an affirmative defense, and affirmative defenses generally do not justify dismissal. *Benson* v. *Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Nevertheless, a court may dismiss a claim on the basis that it is federally preempted when the complaint "sets out all of the elements of [the] affirmative defense." *Indep. Tr. Corp.* v. *Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see also Benson*, 944 F.3d at 645.

With two exceptions not relevant here,[4] section 1681t(b)(1)(F) of the FCRA prohibits states from regulating "the responsibilities of persons who furnish information to consumer reporting agencies." As previously discussed, those furnisher responsibilities derive from section

---

[4] Section 1681t(b)(1)(F) carves out "section 54A(a) of chapter 93 of the Massachusetts Annotated Laws" and "section 1785.25(a) of the California Civil Code" from its broad preemption provision. 15 U.S.C. § 1681t(b)(1)(F)(i)–(ii).

1681s-2 of the FCRA. In *Purcell* v. *Bank of Am.*, the Seventh Circuit interpreted section 1681t(b)(1)(F) as not only barring state statutes from regulating furnisher responsibilities but also as barring common law claims based on furnisher responsibilities. 659 F.3d 622, 624–26 (7th Cir. 2011). This is binding precedent. Sparkman cites an earlier district court opinion, *King* v. *Retailers Nat. Bank*, 388 F. Supp. 2d 913, 916 (N.D. Ill. 2005), to argue that section 1681h(e) of the FCRA carves out from preemption state law claims based on "knowing and intentional misconduct, such as fraud or deceptive practices." (Dkt. 11 at 3.) But the Seventh Circuit rejected that same argument in *Purcell*, concluding that section 1681h(e) should not be read as "preserv[ing] state-law claims that come within the scope of § 1681s–2," since section 1681t(b)(1)(F) categorically preempts these claims. 659 F.3d at 626. Finding otherwise "would defeat the 1996 decision that administrative action rather than litigation is the right way to deal with false reports to credit agencies." *Id.*

Sparkman's ICFA claim is based on allegations that Truist engaged in unfair and deceptive business practices "by furnishing inaccurate credit information to the credit bureaus" and continuing to report Sparkman's account as "delinquent despite payment records showing otherwise." (Dkt. 1-1 ¶¶ 27–28.) Similarly, Sparkman's common law fraud claim is based on her allegation that "Truist falsely reported [Sparkman's] May 2025 payment status as delinquent despite possessing … account records that contradicted this." (*Id.* ¶ 35.) In turn, Sparkman's response further clarifies that the "ICFA and fraud claims are based on Truist's knowing and intentional misconduct in falsely reporting [Sparkman's] payment status as delinquent despite possessing account records that contradicted this information." (Dkt. 11 at 3.) Thus, from Sparkman's own allegations, it is clear that her state law claims are based on the "subject matter regulated" under section 1681s-2. 15 U.S.C. § 1681t(b)(1)(F). This is precisely the conduct that

7

the FCRA carves out for federal preemption. *Id.*; *see also Purcell*, 659 F.3d at 626. Accordingly, Sparkman's Counts II and III must be dismissed with prejudice on this basis.[5] *See Turek* v. *Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011) (where preemption applies, dismissal with prejudice is proper).

## CONCLUSION AND ORDER

For the foregoing reasons, the court grants Truist's motion to dismiss. (Dkt. 6.) The court dismisses Count I without prejudice to Sparkman re-pleading facts, if they exist, that would form a basis for liability under section 1681s-2(b), and the court dismisses Counts II and III with prejudice. Sparkman has until June 25, 2026, to file an amended complaint that is consistent with this opinion and Federal Rule of Civil Procedure 11. If she elects not to do so, the dismissal without prejudice will be converted to one with prejudice on June 26, 2026. A status hearing is set for July 1, 2026 at 9:30 a.m. in courtroom 2201.

Date: June 11, 2026

_____
U.S. District Judge Joan H. Lefkow

---

[5] Since the court dismisses these claims on the basis that they are federally preempted, it declines to address Truist's remaining arguments that Sparkman's state law claims are not well-pleaded. The court also declines to address Sparkman's meritless argument that *pro se* complaints are to be construed liberally, since Sparkman's complaint was apparently filed by an attorney (albeit one who inappropriately failed to file an appearance), and her response brief was filed by an attorney.